Good morning, Your Honors, and please support Merrilee Marshall on behalf of Petitioner Michael Herrera. In this case, we have only to look to the opinion of the Court of Appeal to see the total unreasonableness of their decision. There's no reasonable jurist that could have found in this case, under any standard, that the elements of the gang allegation were proven beyond a reasonable doubt, or that the jury was instructed so that they could make a determination beyond a reasonable doubt. We have an expert that knew nothing about the Santa Monica Gang. Insofar as there was still a Santa Monica Gang in existence, he testified only about one individual two years earlier who had committed two crimes. There's no evidence that those crimes were committed even for the benefit of that gang. I'm sorry, I've dropped the name of the guy who was convicted previously who was a member of the gang. What was his name? Lewis is what I can tell the court in a second. I think it was Lewis. Yeah. Campos, I'm sorry. Let's say Campos. Campos? Yeah. Did he get a gang enhancement for those crimes? We don't know. It was not in the record. That's part of the problem. There's nothing to indicate that those crimes were committed for the benefit of the gang, as opposed to just Mr. Campos going on his own little crime spree. And then the expert that they do put on, Sergeant Vladimir, who testifies in all state gang cases, just expressed generalities, nothing about the Santa Monica Gang. In fact, he admittedly had no expertise in that area. He said that all the gangs in Southern California operate under the Mexican Mafia, and they all act the same, and they all have these primary purposes to do these kinds of crimes. But that kind of a generality is not what's required. What about the witness whose name was Ullano? Excuse me? Mr. Ullano. Ullano was the gang expert, but then Sergeant Vladimir was the one that testified about the Mexican Mafia. Yeah. Mr. Ullano testifies that Sotel and Santa Monica were rivals and that there was shooting going on between them. He never told us any specifics about it. He said there had been shootings, but we don't know who shot who, what was going on, if there was any crimes committed. He pointed to nothing specific. And as you know, the instructional error plays right into this. It's hard to separate them out. The instruction given by the court was so different from the pattern instruction that was recommended by Kaljic that it never told the jury that they have to find that the primary activity of the Santa Monica Gang was to commit these kinds of crimes. The jury knew it could have just been, you know, the one crime or no crime at all because there was, other than the crime that was on trial, what was alleged to, of course, be a gang crime. We don't know that the accomplice crime was even a gang-related crime. We do have some testimony about the Santa Monica Gang was comprised of different cliques, the one known as the 13, the one known as the 17. There was some discussion about colors, said that Santa Monicas liked to fly blue. Why isn't all of that evidence of a gang? It's evidence that there might be a gang, but not necessarily that the primary. One of my favorite cases, of course, is the California Supreme Court case where it says, I can't even pronounce it, Sangapithi, it's quoted in my brief, where they say, you know, the LAPD is an organization too, but it's definitely not a criminal street gang just because a couple of officers fly blue as well, I'd say that would be a problem. There's testimony that Mr. Campos had a Santa Monica Gang tattoo. Mr. Campos? Yeah. I'm looking at SDR page 120. Might well have had, but it doesn't mean he committed that particular crime for the benefit of a gang. No, but if we have a gang tattoo, it may be an indication of a gang. That is, if we have a number of people that are allied together, that are flying colors in Los Angeles, that have unique tattoos that may bind them to a particular organization, this isn't the Junior League. And the fact that the ladies of the Junior League or the veterans of foreign wars wear distinctive uniforms of the Shriners, wear fezes, doesn't make them a gang. But if we do have people who are involved in shooting at each other, who have distinctive tattoos, who wear distinctive colors, that may be indicative in other neighborhoods of exactly what gangs would do, why isn't that sufficient evidence for a jury to conclude that the Santa Monica Group is a gang? Well, perhaps if they'd been properly instructed, they could conclude that it was a gang, but that does not necessarily mean that its primary activity, as required by the state law, was to use guns. And we did have evidence. We have evidence in the record that there were shootings between the Sotels and the Santa Monicas. How much more do we have to have? I think we need to have specific shootings that took place where the expert could point to individuals that he knew of that had been involved in crimes. Shootings are crimes, presumably. I mean, perhaps not, but most of the time, yes. Can they use the evidence from this crime to support the claim that this was gang-related? In other words, can this support that? Because you have a member who admits that he's a member of the Santa Monicas who is firing a gun and shooting at Sotels who were in the wrong neighborhood. Well, that sort of ñ I mean, he did not admit that he shot at the Sotels. He shot at the ground. But he had a gun in his hand, and he was shooting. His statement is, I was shooting to try and scare somebody, but he was trying to scare Sotels who were in the wrong neighborhood and had been threatening somebody on the street. Yes. Well, Your Honor, legally, under state law, they can consider the crime that's presently being tried as one of the predicate offenses, but that still does not establish the other element. The missing element here is the primary activities. I haven't alleged that the missing element is predicate offenses, although they're pretty weak on that, too, because the only predicate offense that we know for sure of is the one that my client was on trial for. But that was not raised below, and I did not handle this on direct appeal. So I'd like to save some time for rebuttal unless there are questions. Good morning, Your Honors. May it please the Court. Deputy Attorney General Sarah Farhad on behalf of Respondent. Your Honors, the issues in this case are not whether the jury's findings on the state gang enhancement were supported by sufficient evidence, or whether the trial was successful,  violated Petitioner's due process. Those issues have already been resolved against Petitioner by the state courts. Rather, the issues this Court must resolve are whether the state court's determination of those issues was a reasonable application of federal law, and under the Supreme Court's recent decision in Harrington v. Richter, the pertinent inquiry is whether fair-minded jurists could disagree on the correctness of the state court's decision. If they can, then federal habeas relief is precluded. Viewed under this standard, these issues must once again be resolved against Petitioner. I'd like to just address a couple of the issues that opposing counsel brought up. First of all, regarding substantial evidence with the sufficiency of the evidence for the gang enhancement. Here, the Court of Appeal found there was sufficient evidence. The district court agreed. Not only was there the evidence of Jose Campos and his prior offenses. Did Campos get a gang enhancement? Your Honor, that's not in the record. However, I would point out that under People v. Gardelais, whether or not those prior offenses were committed for the benefit of a gang is not necessary. It's not necessary that the people show that those prior offenses were gang-related. And that's at page 610 of the Gardelais opinion. So whether or not there was a gang enhancement alleged for Campos, it's not necessary. It's not critical to the inquiry before this Court. All that matters is that what was alleged was that Campos, who was a known Santa Monica gang member, a fellow gang member of Petitioner's, was previously convicted of robbery and murder. And that's sufficient. There's also the currently charged offenses, which can be considered Petitioner's offenses or his charges for robbery, shooting at an inhabited vehicle. Those are enumerated offenses within the gang statute, and that's sufficient. But there was even more in this case. We had the evidence or the testimony from both Officer Ueno. What the officer said, as I recall, was that these gangs take their cue or try to pattern themselves over what is referred to as Mexican mafia. Isn't that right? That was Detective Haldemar, yes. That's what his testimony, the detective, the second gang. The detective said that. Yes, he did. And so the Mexican mafia, one of their primary activities is to murder, robbery. And so then if you have a gang and it's primarily its members are Mexican, then their primary activity is established by that testimony as being murder or robbery. Exactly, yes. All gangs where you have, and so you can say that with practically all these gangs, that their primary mission is murder or robbery. And so they all get that enhancement. Well, there's a leap there, Your Honor. As far as the primary activities element of the gang enhancement goes, your reasoning could be sound in the sense that Officer Valdemar's testimony was that all Latino gangs in Southern California are modeled after the Mexican mafia, and the Mexican mafia's traditional occupations included, as Your Honor discussed, robbery, murder, car theft. And so in that sense, case by case, that's going to have to be established. But in order to secure the gang enhancement against any other defendant, the prosecution is still going to have to satisfy the other elements of the gang enhancement, the predicate offenses and the other elements which aren't, you know, those issues aren't before this Court. We're just discussing whether or not there was sufficient evidence of the primary activities of the gang in Mr. Herrera's case. And based on, you know, Campos, the charged offenses and the evidence, the testimony given by the two officers, the officer and the detective, I submit like the Court of Appeal found that there was sufficient evidence, substantial evidence supporting that enhancement. And, again, under AEDPA, there is, you know, it was reasonable for the Court of Appeal to make that finding. It's curious. I've seen a number of gang cases. I don't think I've ever seen one come up on this issue, because the issue here is not so much whether Herrera's action was in connection with a gang, that is whether this was some kind of a gang dispute or whether this was a domestic violence which shouldn't have anything to do with gang, but really whether the Santa Monica's are a gang. It strikes me as interesting and unusual, as unusual to you, Counsel, that the Santa Monica's haven't previously been identified as a gang in the way that Crips and Bloods, and, of course, you have all kinds of subgroups of those principal gangs. Well, I don't think that's necessarily an issue based on the state court record. It sounded like, I mean, the way that the experts testified, the Santa Monica gang, like Your Honor was pointing out to opposing counsel, they satisfy several of the gang enhancement criteria. They have a common symbol, color, et cetera, that sort of thing. I don't think that's necessarily the issue so much as whether or not the primary activities, in this particular case, given the expert testimony, and I think that that's really kind of the crux of Petitioner's argument, the expert testimony was lacking, as opposed to other cases where an expert gets up on the stand and says the primary activities of this gang are X, Y, and Z in my experience. That didn't happen in this case. We have to make a reasonable inference from what Detective Valdemar testified to about the Mexican Mafia. So, you know, reasonable inferences are fine. The logic is that the Mexican Mafia is looked up to as a model by Mexican kids. And so if you have a gang, and the gang members are of Mexican heritage, that because the Mexican Mafia engages in murder and robbery and the rest of it, then the logic is that these gang members, Santa Monica Gang, it's shown that they also, their primary activity is murder, robbery, et cetera. And that all gangs where you have members of Mexican heritage, their primary activity is also murder, robbery, et cetera. And that's what it comes down to. Well, I don't think that that presumption, that's a presumption that... What else do you have here? Aside from... I mean, that was a big thing. We have that. You have the charge of defenses. Petitioner was an admitted gang member. There was testimony from, I believe, either the officer or the detective that the petitioner is a known Santa Monica Gang member. And, you know, there's the evidence... He's a known Santa Monica Gang member. Yes. They all admire the Mexican Mafia, and the Mexican Mafia likes to do murders and robbery. So the primary activity of the Santa Monica Gang is murder and robbery. Well, it's not so much an admiration. Huh? It's not so much that they admire the Mexican Mafia. Officer Voldemar went into the history of the Mexican Mafia, how it began as a prison gang, and how all of the Latino gangs in Southern California are basically... They're not subsumed, but they're modeled after the Mexican Mafia. It's almost like an umbrella, where the Mexican Mafia is the umbrella, and all of the Southern California Latino gangs fall under that umbrella. They're all modeled the same way. I never heard this before. Never heard this before. I mean, that's... That's the testimony in the case. Well, I know. I never heard this before. You know, I grew up in East L.A. Wow. And, you know, I know a lot of people. And I've been, when I was on the community court and the Superior Court, I just sat in many areas in L.A. I mean, this seems to me far-fetched, illogical. If you took a course at UCLA in logic and you answered a question that way, you'd probably get a D-minus. Well, luckily for me, I didn't have to do that. And I have to believe that the detectives in this case have better information about the gang system than I do. I took a course there, and believe it or not, I got an A in it. It shocked me. But you got an A in the courses, though. Yeah. I don't think. And it was, anyway, still today I don't. I'm amazed. That's the first time I've ever made a public confession on that. I'm honored, Your Honor. Your detective witnessed how many years' experience did he have working in this area? I'd have to go back and check the record on that. It was substantial, as I recall. I believe it was. It was a substantial amount of time. And like I said, he went through the entire history of Southern California gangs and where they originated and that sort of thing. And so just given the state record in the case, I don't think, especially viewed under the lens of AEDPA, that federal habeas relief is possible on that claim. If Your Honors would like me to address the instructional error claim, I'd be happy to do that. However, I see my time has run out, and so unless there are specific questions you'd like me to address on that, I will submit. And thank you, Your Honors. Just briefly, I think we wouldn't be here talking about the expert testimony and the inadequacy of it if this wasn't a case that could have not been a gang case at all. I mean, some cases that I see that come across my desk, I mean, you don't need an expert. I mean, they're yelling gang slogans. They're waving their flags, shooting each other. This case, we only know the detectives found out later that the people in the case in the car were Sotel gang members. There's some evidence that they spoke to two girls and said, hi, girls, or something, we're from Sotel. And then the next thing we knew, they were shot. But there's no evidence that anyone heard them say that, that anyone expected them in the neighborhood, or it could have identified them as gang members. It could just well, as counsel said, or somebody said, it could have been a domestic dispute. It could have been any reason why they chose to shoot at this particular car. And I just want to clarify that my client admitted to being an ex-Santa Monica gang member, not a Santa Monica gang member. He was an older fellow and not active in the gang. What did he say? Hm? He was an ex? Older fellow. He is an ex-Santa Monica gang member. He was not an active member of any. He was an ex at the time this happened? That was his testimony. What age was he? He was in his 40s. 40s? Yeah. Early 40s, late 30s, early 40s. I can't remember the exact age, but an older fellow, what in gang terms would be called perhaps a veterano. But I don't believe the Santa Monica gang really rose to that level of gangmanship. I think it's impermissible inference to paint all young Hispanic groupings that have a neighborhood association with as broad a brush as Sergeant Vladimir did. I don't think that they're all necessarily connected with the Mexican Mafia, if there is such a thing. And I think it's an impermissible inference. And unless there's more questions, I'll submit. Thank you. All right. Okay. This matter is submitted. We'll go to the next one. And let's see. That's the United States versus Fowler.
judges: Davidson, Pregerson, Bybee